## WHITE *v.* UNITED STATES ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES
FOR THE EASTERN DISTRICT OF VIRGINIA.

No. 177. Argued January 26, 1926.—Decided March 1, 1926.

1. The Act of March 5, 1925, giving appellate jurisdiction to the Circuit Courts of Appeals in suits for war risk insurance, including suits pending, did not apply to a case pending in this Court on appeal on the date of the Act. P. 179.
2. A form of certificate of war risk insurance providing that it should be subject not only to the War Risk Insurance Act but to any future amendments thereof, could be validly adopted·under the Act by the Director with the approval of the Secretary of the Treasury. P. 180.
3. Where a certificate was thus subject to future legislation, the beneficiary named had not such a vested right in the instalments payable·as will prevent letting in another beneficiary not eligible under the statute originally, but named in the soldier's will and made eligible by an amendment of the statute passed after his death. P. 180.

299 Fed. 855, affirmed.

APPEAL from a judgment of the District Court in a suit to enforce rights claimed under a certificate of war risk insurance.

*Mr. A. T. Gordon,* with whom *Mr. R. L. Gordon, Jr.,* was on the brief, for appellant.

The judgment of the court below, founded upon the amended Act, violates the Fifth Amendment by taking the property of the appellant without compensation. *Forbes Pioneer Boat Line Co.* v. *Commrs. Everglades Drainage Dist.,* 258 U. S. 336; *Pennie* v. *Reis,* 132 U. S. 464; *Steger* v. *Building & Loan Assn.,* 208 Ill. 236; *Barrett* v. *Barrett,* 120 N. C. 127; *Welch Water Co.* v. *Town of Welsh,* 62 S. E. 497; *Ettor* v. *City of Tacoma,* 228 U. S. 146. The interest of the appellant became vested upon the death of the insured. *Supreme Council* v. *Behrend,* 247 U. S. 394. The designation of Lucy

Reeves as one of the beneficiaries of the contract is not voidable, but void. The Act of Congress expressly forbade the insured to name her as a participant in the fund. The power of Congress to extend the permitted class of beneficiaries ceases when the title of the permitted beneficiary becomes complete.

The policy is not a gratuity, but a contract, founded upon a valuable consideration, to wit, seven dollars per month deducted from the soldier's pay. It has been fully performed by the payment of the sums stipulated for and by the performance of the services which it was intended to stimulate. The fact that the insured only paid the normal premiums incident to times of peace and the Government paid the additional premium incident to the hazards of war, cannot affect the obligation to pay the sum contracted for or justify an interpretation of the Act which robs the contract of its character as a property right.

The contract is entire, founded upon an indivisible consideration. The fact that the payments are in future installments is immaterial. The contract insured the life of the soldier in the sum of ten thousand dollars. This sum is divided into 240 installments, based on a life expectancy of twenty years. In the event of the soldier's death within this period, the promise is to pay his beneficiary the same installments for twenty years or, in the event of her death, for such proportion of it as she actually continues in life. Hence death is a condition subsequent, operating to defeat the previously vested interest in the fund. An estate is "vested" where there is an immediate right of present enjoyment, or a present fixed right of future enjoyment. *Armstrong* v. *Barber,* 239 Ill. 389; *United States* v. *Fidelty Trust Co.,* 222 U. S. 155.

Congress can make no contract with the insured except by statute. The Act in question did not, and could not constitutionally, authorize the Department to incorporate

conditions in the contract reserving to Congress the power to alter or change its terms. *Williamson* v. *United States,* 207 U. S. 425.

The power of Congress to reserve the right to alter or amend the grant is exclusive.

But, aside from this, had the general language found in the application of the insured been incorporated in the Act of 1917, it would not change the result. A general reservation of this character gives no power to destroy the obligation of the contract. The reservations have relation to the executory stages of performance during the life of the contract, and then only to reasonable changes that do not materially affect its obligation. *County of Stanislaus* v. *San Joaquin Canal Co.,* 192 U. S. 201; *Holyoke Water Co.* v. *Lyman,* 15 Wall. 500; *Miller* v. *New York,* 15 Wall. 478; *Vinton* v. *Welsh,* 9 Pick. 92; *Close* v. *Glenwood,* 107 U. S. 466; *Sinking Fund Cases,* 99 U. S. 710; *Curran* v. *State,* 15 How. 402; 19 R. C. L. 1207, §§ 23–24; 7 C. J. 1080; *Bornstein* v. *Grand Lodge &c.,* 81 Pac. 271.

*Solicitor General Mitchell,* with whom *Assistant Attorney General Letts,* and *Messrs. Alfred A. Wheat* and *William M. Offley,* Special Assistants to the Attorney General, were on the brief, for appellees.

The jurisdiction of this Court on direct appeal must be rested on § 238 of the Judicial Code, as it stood in 1924, allowing direct appeals in cases involving the construction of the Constitution of the United States. As this appeal was taken in August, 1924, the Act of February 13, 1925, does not apply. Although Congress may withdraw the right of appeal even after the appeal has been taken, *Crane* v. *Hahlo,* 258 U. S. 142, the Act of March 4, 1925, is prospective in the sense that it was not intended to affect cases in which appeals had been taken prior to its passage, especially as the earlier Act of February 13, 1925, had expressly saved pending appeals.

The jurisdiction of this Court depends therefore on whether a substantial constitutional question is presented. *Goodrich* v. *Ferris,* 214 U. S. 71; *Sugarman* v. *United States,* 249 U. S. 182.

The Act of December 24, 1919, did not deprive the appellant of property without due process of law, and its retroactive provisions must be sustained because the War Risk Insurance Act, as amended October 6, 1917, gave to the Director, under the direction of the Secretary of the Treasury, power to administer, execute, and enforce the provisions of the Act and authority to make rules and regulations for that purpose and to determine the full and exact terms and conditions of the contract. The Director exercised this power by prescribing a condition, which was inserted in the contract in express terms, that the contract should be subject in all respects to the provisions of the Act of October 6, 1917, and of any amendments thereto and of all regulations thereunder " now in force or hereafter adopted." The power given him by the Act was sufficiently broad to authorize the Director to reserve in the contract a power to the United States to enact laws amending the contract subsequent to its issuance, at least for the purposes of carrying out the objects of the Act, and the wishes of the insured. These provisions should be construed to render the law subject to modification by Congress after the issuance of the contract and after the death of the insured so as to meet the expressed wish of the soldier as to which of those dependent upon him should receive the benefits of the insurance.

The Act of December 24, 1919, is a legislative recognition that the Director was acting within his powers, or is a ratification of his act in reserving to Congress a right to alter the contract. The Act of December 24, 1919, validating an ineffective attempt of the insured to designate his aunt as a beneficiary, may be sustained on principles applied to sustain curative Acts.

Mr. Justice Holmes delivered the opinion of the Court.

George White, a soldier in the American army during the late war, on July 1, 1918, took out insurance upon his life for $10,000 under the War Risk Insurance Act of October 6, 1917, c. 105, Article IV, § 400; 40 Stat. 398, 409. He designated his mother, the appellant, as beneficiary, but by a letter of the same date, since established as his will, he provided that one-half of the sums paid should go to his aunt, Lucy Reeves, who at that time was not among those to whom the statute allowed the policy to be made payable. § 401. He died on October 4, 1918, and thereafter monthly installments of $57.50 were paid to the mother through January, 1921. The award of the whole to her then was suspended on the ground that by the will the aunt was entitled to one-half. The Act of December 24, 1919, c. 16, § 13; 41 Stat. 371, 375, had enlarged the permitted class of beneficiaries to include aunts among others and had provided that the section should be deemed to be in effect as of October 6, 1917, and, with proper safeguards, that awards of insurance should be revised in accordance with the amended act. On October 9, 1923, the mother filed a petition under § 405 of the Act of 1917 and the Act of May 20, 1918, c. 77; 40 Stat. 555, to establish her claim to the whole, and set up that to give effect to the Act of 1919 would be to deprive her of her property without due process of law contrary to the Constitution of the United States. The District Court decided in favor of the aunt. 299 Fed. 855. Mrs. White appealed to this Court in August, 1924, and it fairly may be assumed that the Act of March 4, 1925, c. 553; 43 Stat. 1302, 1303, giving the appellate jurisdiction to the Circuit Court of Appeals does not apply.

Mrs. White's argument, of course, is that, although the statute allowed a beneficiary to be named by will, it did

not extend the benefit to aunts, so that her son's will was ineffective at the time when it was established; that therefore the mother's interest vested as absolute at the son's death, and could not be defeated by later legislation. But this argument fails when the precise position of the parties is understood.

The certificate of insurance provided in terms that it should be " subject in all respects to the provisions of such Act [of 1917], of any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted, all of which, together with the application for this insurance, and the terms and conditions published under authority of the Act, shall constitute the contract." These words must be taken to embrace changes in the law no less than changes in the regulations. The form was established by the Director with the approval of the Secretary of the Treasury and on the authority of Article I, § 1, and Article IV, § 402, of the Act, which, we have no doubt, authorized it. The language is very broad and does not need precise discussion when the nature of the plan is remembered. The insurance was a contract, to be sure, for which a premium was paid, but it was not one entered into by the United States for gain. All soldiers were given a right to it and the relation of the Government to them if not paternal was at least avuncular. It was a relation of benevolence established by the Government at considerable cost to itself for the soldier's good. It was a new experiment in which changes might be found necessary, or at least, as in this case, feasible more exactly to carry out his will. If the soldier was willing to put himself into the Government's hands to that extent no one else could complain. The only relations of contract were between the Government and him. White's mother's interest at his death was vested only so far as he and the Government had made it so, and was subject to any conditions upon which they might agree. They

did agree to terms that cut her rights down to one-half. She is a volunteer and she cannot claim more. See *Helmholz* v. *United States,* 294 Fed. 417, affirming 283 Fed. 600. *Gilman* v. *United States,* 294 Fed. 422, affirming 290 Fed. 614.

*Judgment affirmed.*