## BAKER et al. v. UNITED STATES.

Circuit Court of Appeals, Fifth Circuit.
March 6, 1928.

Rehearing Denied March 31, 1928.

No. 5039.

1. **Army and navy ⬡51½—Regulations respecting cancellation of war risk insurance at insured's request and providing days of grace therefor held retrospective in operation.**

Regulations adopted September 29, 1919, Treasury Decisions 48 and 54, War Risk Insurance Bureau, were retrospective in operation, and had the effect of making the effective date of cancellation of a certificate the same, whether it was made on request of insured or followed default in payment of premiums without such request, and a cancellation, though by request, did not become effective until expiration of the days of grace allowed for payment of further premiums.

2. **Army and navy ⬡51½—Bureau of War Risk Insurance held to have statutory power to make regulations retrospective to carry out benevolent purposes of act (Comp. St. § 514uuu).**

The power conferred on the Director of the Bureau of War Risk Insurance by Comp. St. § 514uuu, to make such regulations "for the protection and advantage of and for alternative benefits to, the insured and the beneficiaries, as may be found to be reasonable and practicable," *held* broad enough to authorize a retrospective regulation to correct inequalities in former practice and carry out more effectively the benevolent purpose of the act.

In Error to the District Court of the United States for the Western District of Texas; Charles A. Boynton, Judge.

Action at law by John Thomas Baker and others against the United States. Judgment for defendant, and plaintiffs bring error. Reversed and remanded, with direction.

James P. Alexander, of Waco, Tex. (Harry R. Jones, of Waco, Tex., on the brief), for plaintiffs in error.

John D. Hartman, U. S. Atty., of San Antonio, Tex. (John D. Hartman, U. S. Atty., of San Antonio, Tex., and J. O'C. Roberts, Acting Gen. Counsel U. S. Veterans' Bureau, and Bayless L. Guffy, Atty. U. S. Veterans' Bureau, both of Washington, D. C., on the brief), for the United States.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This was an action on a war risk insurance certificate or policy issued to Everett Baker on February 1, 1918, while he was serving in the United States navy. A jury was duly waived and the court made findings of fact and conclusions of law. The court found that all premiums, up to and including the month of December, 1918, were paid by deductions of the monthly premiums from the insured's pay, that the insured, on December 4, 1918, in writing requested a discontinuance of his insurance and pursuant to that request the Bureau of War Risk Insurance canceled the certificate as of January 1, 1919; that the insured suffered a compensable disability beginning February 21, 1919, the date of his discharge from the navy, his disability and earning capacity at that time being reduced 10 per cent., and thereafter increased, and that he was permanently and totally disabled from December 16, 1921, until the date of his death, February 5, 1922; and that under a claim for compensation made by the insured in December, 1921, an award was made of an amount more than enough to pay all premiums, no part of which amount was paid until after his death. The court concluded that the cancellation of the certificate became effective as of January 1, 1919, and entered judgment for the defendant.

[1] Section 305 of the World War Veterans' Act, as amended (44 Stat. 799 [38 USCA § 516]), provides in effect that, where any person has allowed his insurance to lapse, or has canceled it while suffering from a compensable disability, and at the time of his death was entitled to compensation remaining uncollected, so much of his insurance as such uncollected compensation would purchase shall not be considered as lapsed, canceled, or reduced. As applied to the above-stated facts, that provision has the effect of reviving or keeping in force the deceased's insurance, if he was suffering from a compensable disability when the cancellation of his certificate took effect. Under regulations in force when the insured's request that his insurance be discontinued was made and acted on, insurance did not lapse for nonpayment of premiums, if the unpaid premium was paid within 31 days after the expiration of the month in which a premium was payable and was not paid, but a cancellation of a certificate pursuant to the insured's written request took effect "on the regular monthly renewal date of the policy in the month following that in which the request is made." Bulletin No. 1, Bureau of War Risk Insurance; Treasury Decision 33, Bureau War Risk Insurance. If the insured had not made the request that his insurance be discontinued, it would not have lapsed for failure to pay the premium payable January 1, 1919, until after the date, February 21, 1919, when

the government began to owe him compensation.

An effect of those regulations was that the insurance of one who paid all premiums up to and including December, 1918, and who did not request a cancellation of his certificate, remained in force throughout and beyond the month of February, 1919, while the insurance of another, who paid all premiums up to and including December, 1918, but who in that month in writing requested a cancellation of his certificate, did not remain in force beyond the regular monthly renewal date of the policy in January, 1919. It followed that one who applied in writing for a cancellation of his certificate got less insurance for the premiums he paid than another similarly situated, who stopped paying premiums at the same time, but did not apply for a cancellation of his certificate. Regulations adopted September 29, 1919, contain the following provisions:

"In the case of term insurance canceled or reduced, the term insurance, excepting that portion of the insurance which is converted, shall be deemed to be canceled or reduced, as the case may be, thirty-one days (the grace period) from the last day of the calendar month on which the unpaid premium was payable. * * *

"In every case where reinstatement, in whole or in part, of lapsed or canceled term insurance is desired, the insured shall file with the Bureau of War Risk Insurance through military channels a signed application therefor, and make tender of the premium for one month (included in the grace period) on the amount of term insurance to be reinstated, and also of the amount of one month's premium on the reinstated insurance for the month in which application for reinstatement is made. * * *

"For the purpose of determining whether yearly renewable term insurance is or was in force, the grace period for the payment of premiums shall be computed so as to include thirty-one days from and after the last day of the calendar month on which, if the insured is in the service or if he had remained in the service, the unpaid premiums would have been payable. During such grace period the insurance shall remain in force but the unpaid premiums shall be deducted from any settlement under the insurance on account of any claims arising during such grace period."

Treasury Decisions 48 and 54, War Risk Insurance Bureau.

The language of the two regulations last set out shows that they were intended to be applicable to insurance which had ceased to be in force before the adoption of those regulations, with the result of entitling an insured whose insurance, pursuant to his request, was canceled before those regulations were adopted, to the same grace period he would have had if he had not made such request. In other words, those regulations were intended to have a retrospective operation.

[2] The adoption of those regulations was an exercise of the power conferred to make by regulations "provisions for the protection and advantage of and for alternative benefits to the insured and the beneficiaries as may be found to be reasonable and practicable." 40 Stat. 409, U. S. Comp. Stat. § 514uuu. The power granted is a broad and general one. Nothing in the language of the grant indicates that the power would be exceeded or abused by a regulation retrospectively correcting discriminating treatment of persons insured, or requiring that a payment of a premium by an insured who in writing requested the discontinuance of his insurance be treated as having had the effect of keeping his insurance in force as long as it would have been kept in force by the payment of that premium if he had not made that request.

There seems to be an absence of good reason for the discrimination involved in depriving an insured who requests the discontinuance of his insurance of the benefit of the grace period allowed to an insured who does not make such request. The relation between the insured and the government created by the issue of the certificate was subject to be changed by regulations adopted after the insurance was in force. The relation is one of benevolence established by the government. White v. United States, 270 U. S. 175, 46 S. Ct. 274, 70 L. Ed. 530. It well may be concluded that it was consistent with the purpose for which that relation was established, and was reasonable and practicable, to protect insured by retrospectively giving to the payment of a premium the same effect in keeping the insurance in force, whether the insured did or did not request that his insurance be discontinued—in other words, to annul what in effect was, in the case of an insured who, when no premium was in default, requested a discontinuance of his insurance, a forfeiture of a privilege or benefit which had been paid for.

The question as to when one's insurance ceased to be in force would be material whenever the question of its reinstatement arises, and the reinstatement is to take effect by a resumption of the payment of premiums,

whether by the act of the insured or by the application pursuant to law of the whole or part of a sum awarded as compensation for disability. We are of opinion that the quoted statute authorized the making, by a regulation operating retrospectively, of a provision requiring that the insurance of one who in writing requested its discontinuance be treated as having remained in force throughout the grace period he would have had if such request had not been made, and that the regulation in question had the effect of keeping deceased's insurance in force until he became entitled to compensation for disability.

It follows that, under the law applicable to the facts found, the certificate or policy sued on was in force when this suit was brought, and that the above-mentioned ruling was erroneous. Because of that error the judgment is reversed, and the cause is remanded, with direction that judgment be rendered in favor of the plaintiff below.

Reversed.